Filed 5/9/25  In re M.H. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re M.H., et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E085089 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ021201) |
| v. | OPINION |
| A.B., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Elizabeth Tucker, Temporary Judge.  Affirmed in part; conditionally reversed with directions.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Mihn C. Tran, County Counsel, Teresa K.B. Beecham and Prabhath Shettigar, Deputy County Counsel, for Plaintiff and Respondent.

1

<u>INTRODUCTION</u>

A.B. (mother) appeals from the juvenile court's order terminating parental rights (Welf. & Inst. Code,[1] § 366.26) as to her children, S.B. and M.H. (the children). She contends the matter must be conditionally reversed and remanded because the Riverside County Department of Public Social Services (DPSS) failed to ask several maternal relatives about the children's possible Native American ancestry. We agree and conditionally reverse the order terminating parental rights and remand for further proceedings.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

On January 31, 2023, DPSS filed a petition on behalf of S.B., who was three years old at the time, and M.H., who was one month old. The petition alleged that the children came within the provisions of section 300, subdivisions (a) (serious physical harm), and (b) (failure to protect), and alleged that M.H. also came within the provisions of subdivision (g) (no provision for support).

The social worker filed a detention report, stating that DPSS received a referral alleging general neglect and that mother was arrested for child endangerment and sending drugs to jail. DPSS obtained protective custody warrants and removed the children. The social worker interviewed mother, who said she lived with the maternal grandfather

_____

**1** All further statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

2

(MGF) and the children.  Mother said she did not know the name of S.B.'s father,[2] and she identified M.H.'s father as N.H. (father), who was currently incarcerated.  The social worker reported that mother denied having any Native American ancestry on January 25, 2023, and father denied having any on January 27, 2023.  The social worker stated that the Indian Child Welfare Act (ICWA) did not apply.  Furthermore, the social worker reported that the maternal great aunt, R.T., agreed to care for the children while mother was in custody.  Thus, the children were placed with her.

The court held a detention hearing on February 1, 2023.  Mother, father, and the MGF were present.  The court asked the MGF if he had any Native American ancestry, and he said he had no reason believe he did.  He had never lived on an Indian reservation or received benefits from an Indian tribe, and none of his ancestors ever claimed Native American ancestry, to his knowledge.  The court also asked mother and father (the parents) if they had any Native American ancestry, and they both said no.  They also answered no to the questions of whether they had ever lived on an Indian reservation, received benefits from an Indian tribe, and whether their ancestors claimed Native American ancestry.

---

[2] We note the section 300 petition and the detention report list S.B.'s father as A.L., Jr.  The detention report states that in 2019, the Riverside County Department of Child Support Services filed a complaint against him as to S.B., and in 2022, he requested paternity testing.

The court asked about parentage, and mother confirmed that father was M.H.'s father. As to S.B., she said she knew the father, but did not know his name or whereabouts, and she had no way of contacting him.[3]

As to ICWA, the court acknowledged that both mother and father filed ICWA-020 forms indicating they had no Native American ancestry. Furthermore, when the court personally inquired of them and the MGF, they all denied having Indian ancestry. The court thus stated, "At this time, the Court finds ICWA does not apply," and it told the parties to inform their attorneys, DPSS, or the court, "[s]hould that information change." The court then detained the children.

*Jurisdiction/Disposition*

On March 23, 2023, the social worker filed a jurisdiction/disposition report, recommending that the court sustain the petition, remove the children from mother's custody, adjudge them dependents, and deny mother reunification services. The social worker continued to state that ICWA did not apply, noting that, on March 16, 2023, mother again denied having Native American ancestry. Mother reported that her mother passed away in 2018. She also said she (mother) had three siblings – maternal uncles N.B. and R.B. (the maternal uncles), and maternal aunt F.B. (the maternal aunt).

On March 28, 2023, the court held a hearing, and mother and the maternal aunt were present. The court set the jurisdiction matter contested.

---

[3] Mother said A.L., Jr. was not S.B.'s father. She explained that A.L., Jr. was previously involved in a family law case because, at that time, she thought he was S.B.'s father.

On May 9, 2023, the court held a contested jurisdictional hearing. The court sustained the petition, adjudged the children dependents, removed them from mother's custody, and ordered family reunification services. The court found that DPSS had conducted a sufficient inquiry regarding whether the children had Indian ancestry and found that ICWA did not apply.

*Sixth-month Status Review*

The social worker filed a six-month status review report on October 30, 2023, recommending that the court continue mother's services. Mother was currently staying at her brother's home.[4] The social worker reported that on July 19, 2023, she contacted and spoke with the maternal aunt, and the maternal aunt said she did not have the means to care for the children at that time due to her job and living conditions.

The court held a six-month review hearing on November 9, 2023, continued mother's services, and set a 12-month review hearing.

*Twelve-month Status Review*

The social worker filed a 12-month status review report on March 11, 2024, recommending that the court terminate mother's services and set a section 366.26 hearing, since she relapsed into drug use. The social worker continued to recommend the court find that ICWA did not apply, reporting that mother again denied having any Native American heritage on February 28, 2024.

---

[4] The report does not specify which brother mother was staying with.

5

The court held a contested 12-month review hearing on May 6, 2024. It adopted the social worker's recommendations, terminated mother's services, and set a section 366.26 hearing. It found that DPSS had made a sufficient inquiry and ICWA did not apply.

*Section 366.26 and Section 388*

The social worker filed a section 366.26 report on August 16, 2024, recommending that the court terminate parental rights and set adoption as the permanent plan. The social worker continued to recommend the court find that ICWA did not apply, noting that, on August 6, 2024, mother denied having Native American ancestry and denied that the fathers of her children or the paternal relatives had any Native American ancestry.

On August 20, 2024, mother filed a section 388 petition seeking to reinstate her reunification services. DPSS filed an addendum report in response to mother's section 388 petition, asking the court to deny the petition. The social worker reported that, on October 28, 2024, she went to mother's home in Indio. Mother said she had been running errands and helping the MGF connect his internet. She said her siblings also help with the MGF, as his health was declining. Mother then stated that she had been "reaching out to her family, such as cousins, her brother, [and] her sister for support." Now that mother realized her children may be adopted, she attempted to reach out to them for placement purposes. The social worker told mother that, even though the children were in a matching adoptive home, she would assess the relatives.

6

The social worker also reported that, on November 1, 2024, she spoke with mother's cousin A.V., who had adopted mother's oldest child during mother's first dependency case. A.V. said she was interested in having the children placed with her, but feared her adoptive daughter would learn the truth about mother being her biological mother.

The court held a hearing on November 14, 2024, and mother and her cousin, A.V.[5], were present. Mother's counsel introduced A.V. as "a cousin who's applying for relative placement." The court denied mother's petition. It went on to adopt the social worker's recommendations, including that DPSS had made a sufficient inquiry and ICWA did not apply. The court terminated parental rights and selected adoption as the permanent plan.

Mother filed a timely notice of appeal.[6]

## DISCUSSION

### DPSS Failed to Comply With Its Initial Duty of Inquiry

Mother argues that DPSS did not comply with its initial duty of inquiry. Despite knowing the identity of and/or being in direct contact with the maternal aunt, mother's cousin A.V., and the maternal uncles, DPSS failed to inquire of them (the extended

---

[5] The maternal cousin introduced herself in court as A.G., but she appears to be the same person as A.V., since mother's counsel informed the court that she had adopted mother's other child. A.V. said she was mother's first cousin. To avoid confusion, this opinion will simply refer to her as A.V.

[6] In the Notice of Appeal, mother indicated she was appealing the termination of parental rights and the denial of the section 388 petition. However, we note the opening brief does not contain any arguments regarding the denial of her section 388 petition. Thus, we consider the issue forfeited.

relatives) regarding the children's possible Indian ancestry.  DPSS concedes that the record does not reflect that the extended relatives were asked about Indian ancestry, yet claims the court properly found that the ICWA inquiry was sufficient.  We conclude that DPSS should have inquired of the maternal aunt, maternal uncles, and mother's cousin A.V.

A.  *Applicable Law*

"ICWA establishes minimum federal standards that a state court must follow before removing Indian children from their families. [Citation.] California law implementing ICWA also imposes requirements to protect the rights of Indian children, their families, and their tribes."  (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678, disapproved on other grounds, as stated in *In re Dezi C.* (2024) 16 Cal.5th 1112, 1152, fn. 18 (*Dezi C.*).)  DPSS and the juvenile court have an "affirmative and continuing duty to inquire" whether a child in a dependency proceeding "is or may be an Indian child." (§ 224.2, subd. (a).)  "The duty to develop information concerning whether a child is an Indian child rests with the court and the Department, not the parents or members of the parents' families."  (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 430 (*Antonio R.*).)

As relevant to this appeal, section 224.2, subdivision (b) specifies that once a child is taken into protective custody, DPSS "has a duty to inquire whether that child is an Indian child.  Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an

8

Indian child and where the child, the parents, or Indian custodian is domiciled." (§224.2, subd. (b)(2).) Extended family members include adults who are the children's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent. (25 U.S.C. § 1903(2); § 224.1, subd. (c)(1).)

In the past, DPSS was obligated "to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709 (*K.R.*).) *Dezi C*. recently explained that section 224.2 does not require DPSS to locate and interview "every possible extended family member," but only those who are "reasonably available to help the agency with its investigation." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140.) Further, the juvenile court "has a responsibility to ascertain that the agency has conducted an adequate investigation and cannot simply sign off on the notices as legally adequate without doing so." (*K.R.*, *supra*, 20 Cal.App.5th at p. 709.) If the court finds that DPSS has complied with its duty of inquiry and there is no reason to know that the child is an Indian child, then the court may find that ICWA does not apply. (§ 224.2, subd. (i)(2); Cal. Rules of Court, rule 5.481(b)(3)(A).) "A juvenile court's finding that ICWA does not apply implies 'that social workers had fulfilled their duty of inquiry.'" (*In re Dominick D.* (2022) 82 Cal.App.5th 560, 567 (*Dominick D.*).) "'We review a court's ICWA findings for substantial evidence.'" (*Ibid*.) However, ultimately, "the juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly

9

diligent is 'a quintessentially discretionary function' [Citation] subject to a deferential standard of review." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

B. *The Court Abused its Discretion in Finding There Was An Adequate ICWA Inquiry*

Mother argues that DPSS's inquiry was deficient because it failed to ask the extended relatives about possible Indian ancestry, despite knowing their identities and/or being in direct contact with them. It is undisputed that the extended relatives were not asked about the children's potential Indian ancestry. Nonetheless, DPSS contends it complied with its duty of inquiry, and its inquiry was "proper, adequate, and duly diligent."

Inquiries have been held insufficient where the agency failed to ask the dependent child's known extended family members about possible Indian ancestry. (See *Dezi C.*, *supra*, 16 Cal.4th at 1141 [the Department's inquiry fell "well short of complying with section 224.2," where it only inquired of the mother and the father, even though their parents, siblings, and the father's cousin were readily available].)

We agree with mother that, in this case, DPSS had a duty to inquire of the maternal aunt and maternal uncles, since they qualified as extended family members and were reasonably available. (§ 224.1, subd. (c)(1); see *Dezi C.*, *supra*, 16 Cal.5th at p. 1140.) Notably, on March 28, 2023, the court authorized relative visits, and the maternal aunt started visiting the children monthly, during mother's visits, which were

supervised by DPSS.  Subsequently, the social worker spoke with the maternal aunt about placement several times.

Additionally, the social worker met with mother on June 7, 2023, and mother said she was staying with her brother at that time.  She subsequently told the social worker that she and her siblings were helping the MGF.  The social worker reported that mother also said she had been "reaching out to her family such as cousins, her brother, her sister for support."  However, there is no indication the social worker asked mother any questions about her family members or got their contact information to inquire about the children's Indian ancestry.

As DPSS concedes, section 224.2 "does not require the agency to 'find' unknown relatives and others who have an interest in the child, merely to make reasonable inquiries.  The operative concept is those people who are *reasonably available* to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140, italics added.)  The maternal aunt and maternal uncles were reasonably available, and possibly other family members referenced by mother were as well.  DPSS should have attempted to locate them and inquire about the children's possible Indian ancestry.  (*Ibid*.)  However, the record contains no discussion of its efforts to locate and/or interview them.  We note that mother's claim regarding her cousin A.V. also has merit since she clearly qualifies under the provision that specifies that the duty to inquire includes "others who have an interest in the child."  (§ 224.2, subd. (b)(2).)

11

DPSS points out that mother, father, and the MGF all denied having any Indian ancestry and contends it had no duty to inquire of the extended relatives because the parents and MGF did not identify them as "having more information about" the children's Indian ancestry. DPSS's attempt to place the burden upon the — parents is contrary to the requirements of ICWA. "Cal-ICWA 'broadly imposes on social services agencies and juvenile courts (*but not parents*) an "affirmative and continuing duty to inquire" whether a child in the dependency proceeding "is or may be an Indian child." [Citations.] '"[T]he burden of coming forward with information to determine whether an Indian child may be involved and ICWA notice required in a dependency proceeding does not rest entirely — or even primarily — on the child and his or her family."' (*Dezi C., supra,* 16 Cal.5th at p. 1138.)

Furthermore, DPSS's position "ignores the express obligation that section 224.2, subdivision (b), imposes on [DPSS] to inquire of a child's extended family members — regardless of whether the parents deny Indian ancestry. By requiring [DPSS] to inquire of a child's extended family members as to the child's possible Indian ancestry, the Legislature determined that inquiry of the parents alone is not sufficient." (*Antonio R.*, *supra*, 76 Cal.App.5th at p. 431; see also, *In re S.S.* (2023) 90 Cal.App.5th 694, 701 ["[E]xtended family members can have tribal information the parents lack, or have forgotten, or refuse to divulge"].)

Therefore, because DPSS failed to inquire of so many known and reasonably available extended relatives, including the maternal uncles, the maternal aunt, and

12

mother's cousin A.V., the court abused its discretion in finding that ICWA did not apply. (See *In re K.T.* (2022) 76 Cal.App.5th 732, 744.) We further note that since mother said she was reaching out to family members for support and referenced "cousins," DPSS should clarify whether she was referring to her own cousins, or the children's cousins, who would qualify as extended relatives. (§ 224.1, subd. (c)(1).) The order terminating parental rights must therefore be conditionally reversed, and the matter remanded for DPSS to make the proper inquiry. (§ 224.2, subds. (b) and (c).) If the inquiry reveals a reason to believe the children are Indian children, the court shall proceed in conformity with ICWA and California implementing provisions. (*Dezi C., supra*, 16 Cal.5th at p. 1152.)

## DISPOSITION

The order terminating parental rights is conditionally reversed. The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of ICWA and of Welfare and Institutions Code sections 224.2 (and, if applicable, the notice provisions as well) — specifically, to inquire of the maternal aunt, the maternal uncles, and mother's cousin A.V., regarding the children's Native American ancestry. DPSS should also ask mother if she spoke with the children's cousins for support, and, if so, inquire of them if they are adults who qualify as extended relatives. If, after completing the inquiry, neither DPSS nor the court has reason to believe or know the children are Indian children, the order terminating parental rights shall be reinstated. If DPSS or the

13

court has reason to believe that the children are Indian children, the court shall proceed in conformity with ICWA and California implementing provisions.

The order denying the section 388 petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
Acting P. J.

We concur:

RAPHAEL
J.

MENETREZ
J.

14